ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Pangea, Inc. | ) | ASBCA Nos. 62561, 62640 |
| | ) | |
| Under Contract No. W912WR-17-C-0039 | ) | |

APPEARANCES FOR THE APPELLANT: John C. Grellner, Esq.
J. Randolph Parham, Esq.
  Berger, Cohen & Brandt, L.C.
  Clayton, MO

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Bonnie B. Jagoditz, Esq.
Johanna L. Anderson, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Nashville

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The government moves for summary judgment upon eight claims arising from a contract for the design and construction of a pre-engineered metal building warehouse at a security complex in Tennessee. Appellant cross-moves for summary judgment upon two of those claims.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following background is not in dispute; other, claim-specific assertions will be addressed below.

On September 28, 2017, the U.S. Army Corps of Engineers (Corps, USACE, or government) contracted for appellant, Pangea, Inc., to design and construct a pre-engineered metal building warehouse at the Y-12 National Security Complex in Oak Ridge, Tennessee, for $3,696,859 (gov't mot. ¶¶ 1, 3; app. resp. at 1). The scheduled period of performance was 365 calendar days after notice to proceed (gov't mot. ¶ 3; app. resp. at 1). Pangea acknowledged receipt of the notice to proceed on November 2, 2017; the contract completion date was October 24, 2018 (gov't mot. ¶ 4; app. resp. at 1). On October 17, 2019, Pangea submitted a Request for Contracting Officer's Final Decision on a multi-issue, certified claim, wherein Pangea requested compensation in the amount of $983,067.73, and a time extension of 169 calendar days

(gov't mot. ¶ 5; app. resp. at 1). The claim was, in effect, a request for reconsideration of the denial of Pangea's six previously filed Requests for Equitable Adjustment (REA) and reconsideration of a previously issued Final Contractor Performance Assessment Reporting System (CPARS) Evaluation (gov't mot. ¶ 5; app. resp. at 1). In March and August 2020, the contracting officer issued final decisions addressing the issues previously raised in REAs 2, 4, 6, and the Final CPARS Evaluation (gov't mot. ¶ 6; app. resp. at 1).

## DECISION

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *CDM Constructors, Inc.*, ASBCA No. 61074, 18-1 BCA ¶ 37,124 at 180,682. A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Id.* The non-movant must show an evidentiary conflict *on the record*; mere denials or conclusory statements are not sufficient. *McDonnell Douglas Servs., Inc.*, ASBCA No. 45556, 95-1 BCA ¶ 27,333 at 136,229. If the non-moving party has the burden of proof at trial for elements of its case and fails to provide such proof in response to a summary judgment motion, the moving party is entitled to summary judgment. *CDM Constructors*, 18-1 BCA ¶ 37,124 at 180,682.

*Claim 1: Additional Aggregate Material*

The government seeks summary judgment upon Claim 1, in which Pangea challenges the government's "request for a downward adjustment" from an agreement to pay Pangea $171,264 for 6,400 tons of graded crushed aggregate base (gov't mot. at 22; amend. compl. ¶ 12; R4, tab 28 at 474). Pangea seeks $113,998.11, having been paid (according to the government) some $51,324.72 (amend. compl. ¶ 6 (incorporating October 17, 2019 request for contracting officer's decision); R4, tab 78 at 1370; gov't mot. ¶¶ 27, 30).

### STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following is not in genuine dispute. On April 19, 2018, pursuant to bilateral Modification No. A00002, the government agreed to pay Pangea $171,264 for 6,400 tons of graded crushed aggregate base at $26.76 per ton to remediate unsuitable soils under a concrete slab (*see* gov't mot. ¶¶ 7, 13-14; app. resp. at 2; R4, tab 28 at 472-74). Modification No. A00002 includes Federal Acquisition Regulation (FAR) 52.211–18, Variation in Estimated Quantity (VEQ), which provides (emphasis added):

> If the quantity of a unit-priced item in this contract is an
> estimated quantity and the actual quantity of the unit-priced

2

item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price *shall be made upon demand of either party*. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity.

On October 16, 2018, pursuant to Modification No. A00002, the government paid Pangea $23,334.72 for the placement of 872 tons of aggregate backfill (gov't mot. ¶ 27; app. br. at 2-4; R4, tab 50 at 1273). On December 8, 2020, the government issued unilateral Modification No. P00005, which, in part, compensated Pangea $27,990 for another 1,046 tons of aggregate backfill (gov't mot. at ¶ 30; app. br. at 2-4; R4, tab 102 at 2648-49). The total of those two payments is $51,324.72, for 1,918 tons of aggregate.

The following, however, appears to be in genuine dispute. The government points to what it says is an August 16, 2018 agreement between the parties "on the final quantities for work actually performed under Modification A00006" (gov't mot. at 5-6 ¶ 24 (citing R4, tabs 43 and 53)). However, the government admits that Modification No. A00006 "was not ultimately signed by Pangea" (*id.*), and Pangea responds with the affidavit of its president, Michael Zambrana, who denies any such agreement (app. resp. at ¶ 24; Zambrana aff. at 1). The government also challenges the "weight tickets" that it says Pangea provided the government to substantiate the amount of aggregate used under the concrete slab:

On 2 July 2019, Pangea provided the Corps with weight tickets dated between 27 June 2018 and 2 February 2019 to substantiate its request for additional compensation. These weight tickets were not previously provided to the Corps at the time of delivery, as required by the Contract. None of these weight tickets include the Contract number or project name, as required by the Contract. Neither the weight tickets nor any other documentation indicated which deliveries of aggregate material were used in support of this part of the project. Thus, the Corps could not use these weight tickets to determine the quantity of aggregate material delivered to the work site to backfill the concrete slab.

(Gov't mot. at ¶ 29) However, the government also asserts that "[t]hese weight tickets demonstrate that at least 1,575.4 tons of aggregate material were delivered to the job site" (gov't mot. at 9 ¶ 48 ). Further muddying the picture, the government cites (gov't mot. ¶ 24) an August 23, 2018 memorandum in which a contracting officer's representative states that "the final measured quantity [of aggregate backfill] was 872 tons versus the quantity of 6,400 tons in the original contract . . . [t]his resulted in a quantity underrun in

3

the amount of ($147,929.28)" (R4, tab 43 at 995). The government also cites (gov't mot. ¶ 24, tab 44 (found at R4, pages 998-99)), which the government describes as a "Government VEQ Worksheet in Support of Modification A00006," which worksheet in turn calculates "aggregate weight" at 854.17 tons.

<u>DECISION</u>

The government would have the burden at trial to prove that under FAR 52.211-18, it is entitled to pay less than originally agreed. *See Clement-Mtarri Companies*, ASBCA No. 38170, 92-3 BCA ¶ 25,192 at 125,537. The contentions recited above indicate that the government has not satisfied that burden. Specifically, the record requires further development regarding how many tons of aggregate Pangea used as backfill under the concrete slab. Therefore, whether the government is entitled to an equitable adjustment in the $171,264 contract price for aggregate—and if so, to how much of an adjustment—is a matter for trial. Accordingly, the government's motion for summary judgment upon Claim 1 is denied. *See Watts Constructors, LLC*, ASBCA Nos. 61518, 61961, 19-1 BCA ¶ 37,382 at 181,728; *cf. GSC Constr., Inc.*, ASBCA No. 59402, 16-1 BCA ¶ 36,396 at 177,435 (identifying "at least one reason" to deny summary judgment).

*Claim 2: Design-Related Delay Claim*

In Claim 2, Pangea seeks a compensable time extension arising from design delays allegedly attributable to the government (*see* amend. compl. ¶ 13; R4, tab 78 at 1366). The government moves for summary judgment, saying that Pangea ignores that Pangea's fire suppression system design calculations were untimely, deficient, and not on the project's critical path (gov't mot. at 24). In such cases, delay must be to work on the critical path, because only work on the critical path affects when the project is completed. *Creative Times Dayschool, Inc.*, ASBCA Nos. 59507, 59779, 16-1 BCA ¶ 36,535 at 177,984. Apparently agreeing that the issue here is the government's review of the fire suppression system design, Pangea says that: (1) "it was [the government's] failure to perform a proper review of the earlier versions of [the fire suppression] system that resulted in [the] late and unnecessary delay in issuing the for[-]construction design"; (2) "the 'fact' that the [government's] review [of the fire suppression system] did not affect the critical path of performance is without any factual support"; and (3) "proper review would have avoided the delay since all of the late comments by [the government] should have been covered [earlier]" (app. resp. at 6).

The government asserts that the actual critical path activity—allegedly foundation demolition—was not completed until July 19, 2018; after the government had completed reviewing the fire suppression system design (gov't mot. ¶¶ 24-26, 32-42). In support of this assertion, the government states "[a]s reported on Pangea's July Schedule Update (data date 24 July 2018), Activity S-004 (Demo Foundation) was not completed until

4

19 July 2018" (gov't mot. ¶ 41). However, (1) a party asserting that a fact cannot be genuinely disputed must support the assertion by citing the record (Fed. R. Civ. P. 56(c)(1)(A)); (2) the government does not identify where in the record the July Schedule Update appears; and (3) we will not scour the record for a party's evidence. *Creative Times Dayschool*, 16-1 BCA ¶ 36,535 at 177,983. For its part, Pangea is silent on whether foundation demolition was completed on July 19, 2018 (app. resp. at 5), but what matters more here is that, in the first instance, a party, here the government, seeking summary judgment "always bears the initial responsibility of informing [a] court of the basis for its motion, *and* identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file[],' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added). Because, in the first instance, the government fails adequately to support its motion for summary judgment upon Claim 2, that motion is denied.

*Claim 3: Differing Site Condition*

In Claim 3, Pangea seeks additional compensation for allegedly unsuitable backfill it encountered while excavating for a sewer system (amend. compl. ¶ 14). The government seeks summary judgment, saying that Pangea cannot prove a Type I differing site condition (gov't mot. at 27). Without citing any evidence, Pangea responds that:

> The first four paragraphs of [the government's] argument concern a Type 1 DSC and will not be addressed since Pangea has not asserted a Type 1 DSC. Testimony will demonstrate that the conditions encountered by Pangea in the area, which is the subject of this claim, were materially different than reasonably anticipated by Pangea at the time of bidding on this Contract *meeting the standards of a Type 2 DSC.*

(App. resp. at 7 (emphasis added))

Regardless of what type of differing site condition Pangea alleges it encountered, the government having challenged Pangea's unsuitable backfill claim on summary judgment, it is up to Pangea to demonstrate that there is an evidentiary conflict; that is, Pangea needs to point to an evidentiary conflict on the record, and mere denials or conclusory statements are not sufficient. *McDonnell Douglas*, 95-1 BCA ¶ 27,333 at 136,229. Pangea says its differing site condition claim is of the Type II, in which a claimant must establish that the conditions encountered were unexpectedly and materially peculiar in nature from the conditions anticipated and perceived as intrinsic in common contract interpretation. *Totem Const. Co.*, ASBCA No. 35985, 91-1 BCA ¶ 23,585 at 118,260. Pangea's mere allegations, unsupported by any evidence, are not sufficient to survive summary judgment upon such a differing site condition claim, upon which it

5

would have the burden at trial. *See CDM Constructors*, 18-1 BCA ¶ 37,124 at 180,682; *McDonnell Douglas*, 95-1 BCA ¶ 27,333 at 136,229. Consequently, the government is entitled to summary judgment upon Claim 3, and its motion for summary judgment upon that claim is granted.

*Claim 4: Delay Related to Enforcement of Safety Regulations*

In Claim 4, Pangea seeks additional compensation pursuant to FAR 52.242-14, Suspension of Work, for an alleged delay caused by government enforcement of safety regulations (amend. compl. ¶ 15). The government seeks summary judgment, saying that "Pangea cannot demonstrate the Government's actions to protect those present at the worksite, including the employees of Pangaea and its subcontractor, were unreasonable or beyond the Contracting Officer's authority under the Contract, including the Accident Prevention Clause" (gov't mot. at 33). In response, Pangea references emails and other documents without identifying where, if at all, those documents can be found in the record, and says that "[a] determination of the merits of this claim and the reasonableness of the [government's] actions cannot be determined in a summary action based on the opinion of [the government]" (app. resp. at 9). Because Pangea fails to show an evidentiary conflict on the record, summary judgment is granted to the government upon Claim 4. *See McDonnell Douglas*, 95-1 BCA ¶ 27,333 at 136,229.

*Claim 5: Steel*

The parties cross-move for summary judgment upon whether Pangea is entitled to $33,844 for an alleged increase in the price of domestic steel (gov't mot. at 34; app. resp. at 10). Pangea says that the price increase was the result of tariffs that the United States imposed upon foreign steel (*id.*).

### STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following is not in dispute. Pangea seeks compensation for the increase in the price of domestic steel following the enactment of an ad valorem tariff on steel imports. The President of the United States issued a series of proclamations that changed the ad valorem tariffs on aluminum and steel imports to 10% and 25%, respectively. These proclamations were signed on March 8, 2018, and effective March 23, 2018. In its certified claim, Pangea stated that the steel, quoted in both the original purchase order and the revised purchase order, was domestic steel, and that "the original Purchase Order from Star followed FAR Clause 52.225-9, Buy American Act-Construction Materials correctly." Pangea submitted a purchase order, dated January 19, 2018, which showed a quoted price of $287,136.12 for a variety of steel products. Pangea submitted a change order request, dated April 30, 2018, showing an updated price of $317,559.28 for the same steel products. The change order request does not reference a "tariff," "duty," or "excise tax." (*See* gov't mot. ¶¶ 72-77; see app. resp. at 9)

FAR 52.229-3(c) provides:

> The contract price shall be increased by the amount of any
> after-imposed Federal tax, provided the Contractor warrants
> in writing that no amount for such newly imposed Federal
> excise tax or duty or rate increase was included in the contract
> price, as a contingency reserve or otherwise.

And FAR 52.229-3(a) provides:

> After-imposed Federal tax means any new or increased
> Federal excise tax or duty, or tax that was exempted or
> excluded on the contract date but whose exemption was later
> revoked or reduced during the contract period, on the
> transactions or property covered by this contract that the
> Contractor is required to pay or bear as the result of
> legislative, judicial, or administrative action taking effect
> after the contract date. It does not include social security tax
> or other employment taxes.

Pangea does not persuade us that an increase in the price of domestic steel resulting from a tariff on foreign steel is a "Federal tax" within the meaning of FAR 52.229-3. Consequently, the government is entitled to summary judgment upon Claim 5. The government's motion for summary judgment upon Claim 5 is granted, and Pangea's cross-motion for summary judgment upon Claim 5 is denied.

*Claim 6: Good Faith and Fair Dealing*

In Claim 6, Pangea seeks a time extension, alleging that the government breached its implied duty not to hinder Pangea's performance (amend. compl. at 3 ¶ 17). The government moves for summary judgment (gov't mot. at 35-38).

*STATEMENT OF FACTS FOR PURPOSES OF THE MOTION*

The following, taken from the government's recitation (gov't mot. ¶¶ 78-90), is not in genuine dispute. There is no genuine dispute because Pangea says only this in response to the government's recitation:

> These paragraphs [gov't mot. at 14-16 ¶¶ 78-90] do not
> contain statements of fact, but contain simply a recitation of
> the contentions made by Pangea respecting this claim and the

opinions of Respondent in response to this claim. Pangea understands that it must meet its burden of establishing that the actions and inactions of Respondent alleged in this claim constituted unreasonable interference on the part of Respondent. Pangea intends to do that in the hearings on this Claim.

(App. resp. at 11) If a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

In Claim 6 of its complaint, Pangea seeks a compensable extension of 143 calendar days under the Suspension Clause, for delays caused when the government allegedly breached its duty to cooperate and not to hinder performance and breached its duty of good faith and fair dealing when administering the contract. Although not specified in Claim 6 of the complaint, in its certified claim, Pangea cited a collection of 19 allegations of constructive suspensions, weather delays, and contract changes as evidence of the Corps' contractual duties.

As to the constructive suspension and changes elements of the claim, Pangea contends that the Corps' efforts to require compliance with the contract's specifications and requirements constituted a breach of the government's duty of good faith and fair dealing, thus resulting in approximately 58 calendar days of delays due to compensable constructive suspensions and changes. While Pangea does not dispute the actual contract requirements, Pangea argues that it was unreasonable for the Corps to require compliance with the terms and conditions of the contract because:

> This Contract contains over 1300 pages and references over 150 FARs. It is clear from the mountain of documents incorporated into this Contract, that no bidder could possibly predict or given consideration of the applicable by a government agent to the performance requirements of the contractor and must rely on the typical course of dealing and trade practices . . . [w]ithin those 1300 pages and 150 FARs are further references most of which have nothing to do with the construction of this basic building . . . . It is unreasonable for the government to assume that a contractor bidding or performing on this Contract would be able to sort through this morass of documents to determine what the government wanted.

(R4, tab 78 at 1369)

8

Pangea seeks an extension of three non-compensable calendar days for unusually adverse weather for the period of August 1, 2018 through September 30, 2018. Pangea also seeks an extension of 56 compensable calendar days for unusually adverse weather for the period of November 1, 2018 through March 31, 2019. In support of its claim, Pangea alleges that constructive suspensions pushed weather-dependent activities beyond their planned completion of October 2018, converting otherwise non-compensable delays into compensable delays.

By letter, dated September 4, 2018, the Corps documented its analysis of actual adverse weather delays for the period of June 1, 2018 through August 31, 2018, wherein the Corps determined two days of adverse weather for June, five days of adverse weather for July, and three days of adverse weather for August. However, per Contract Specification No. 00 80 00.00 06 (Special Provisions) ¶1.27, Time Extensions for Unusually Severe Weather, three days of adverse weather were anticipated for June 2018, three days of adverse weather were anticipated for July, and three days of adverse weather were anticipated for August 2018. Accordingly, the Corps determined that Pangea was entitled to a time extension of four calendar days to the contract for this time period. (R4, tab 47)

By letter, dated December 21, 2018, the Corps documented its analysis of actual adverse weather delays for the period of November 1, 2018 through November 30, 2018, wherein the Corps determined five days of adverse weather for November 2018. However, per Contract Specification No. 00 80 00.00 06 (Special Provisions) ¶1.27, Time Extensions for Unusually Severe Weather, four days of adverse weather were anticipated for November. Nine additional days claimed by Pangea were denied. Accordingly, the Corps determined Pangea was entitled to a two-day time extension to the contract for this time period, extending the contract period of performance December 2, 2018 to December 4, 2018. By letter, dated January 15, 2019, the Corps documented its analysis of actual adverse weather delays for the period of December 1, 2018 through December 31, 2018, wherein the Corps determined four days of adverse weather for December 2018.

However, per Contract Specification No. 00 80 00.00 06 (Special Provisions) ¶ 1.27, Time Extensions for Unusually Severe Weather, six days of adverse weather were anticipated for December 2018. Two additional days claimed by Pangea were denied. Accordingly, the Corps determined Pangea was not entitled to an extension for weather days in December. By letter, dated February 22, 2019, the Corps documented its analysis of actual adverse weather delays for the period of January 1, 2019 through January 31, 2019, wherein the Corps determined five days of adverse weather for January 2019. However, per Contract Specification No. 00 80 00.00 06 (Special Provisions) ¶ 1.27, Time Extensions for Unusually Severe Weather, seven days of adverse weather were anticipated for January 2019. Two additional days claimed by Pangea were denied.

Accordingly, the Corps determined that Pangea was not entitled to an extension for weather days in January 2019.

By letter, dated March 22, 2019, the Corps documented its analysis of actual adverse weather delays for the period of February 1, 2019 through February 28, 2019, wherein the Corps determined zero days of adverse weather for February 2019. Nine days claimed by Pangea were denied. Accordingly, the Corps determined Pangea was not entitled to an extension for weather days in February 2019. On April 5, 2019, the Corps executed Modification No. A0007, a unilateral modification of the contract, extending the contract period of performance by two calendar days from December 2, 2018 to December 4, 2018, for "delays caused by adverse weather in excess of anticipated during the period November 1, 2018 through November 30, 2018" (R4, tab 67).

Pangea raised this issue in Request for Equitable Adjustment 6 on May 8, 2019, which the government denied on August 2, 2019. Pangea included this issue as Issue 6 in its certified claim on October 17, 2019, which the contracting officer denied on August 3, 2020 (R4, tab 82 at 1405, 1413-22). On September 30, 2020, the Corps executed Modification No. P00004, a unilateral modification of the contract, extending the contract period of performance by two calendar days from December 4, 2018 to December 6, 2018 (R4, tab 100 at 2638, 2640).

## *DECISION*

Pangea claims that it is entitled to a time extension because, it says, the government "breached its implied duty not to hinder [Pangea's] performance and failed to act in good faith and fair dealing [] in administering the Contract constructively and in effectively suspending [] work on the critical path" (amend. comp. ¶ 17). The government moves for summary judgment on this claim because, it says "[t]here is no evidence to suggest the Corps administered the Contract unreasonably with respect to requiring strict compliance with contract specifications or the calculation of weather delays," and that "Pangea has offered no evidence that the Corps breached its duty of good faith and fair dealing" (gov't mot. at 38).

Pangea, as the proponent of the claim, has the burden of proof. Every contract imposes upon each party a covenant of good faith and fair dealing in its performance and enforcement. The duty of good faith and fair dealing imposes obligations on both contracting parties, including the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party. However, this implicit duty cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions. A breach of the duty of good faith and fair dealing may be shown by proving, *inter alia*, a lack of diligence, willful or negligent interference, or a failure to cooperate. The proper inquiry regarding

10

the duty often boils down to questions of reasonableness of the government's actions. *John Shaw LLC d/b/a Shaw Bldg. Maint.*, ASBCA No. 61379, 21-1 BCA ¶ 37,844 at 183,748.

Pangea's entire response to the government's position consists of the following:

> Without testimony detailing the facts and circumstances of each of the Respondent's actions, a determination of the merits of this claim and the reasonableness of the Respondent's actions cannot be determined. These issues are heavily fact dependent and require an evidentiary hearing.

(App. resp. at 11) Such mere denials and conclusory statements are not sufficient. *See McDonnell Douglas*, 95-1 BCA ¶ 27,333 at 136,229. Pangea has failed to make a showing sufficient to establish the existence of distinct acts that the government as an organization, or any individual representative thereof, has engaged in which would indicate a breach of this duty or would be considered unreasonable, an element essential to Pangea's case, and on which Pangea would bear the burden of proof at trial. *See Watts*, 19-1 BCA ¶ 37,382 at 181,728. The government is entitled to summary judgment upon Claim 6, and its motion for summary judgment upon that claim is granted.

*Claim 7: CPARS*

Pangea claims that it did not receive a fair and accurate CPARS evaluation, and that the CPARS evaluation was issued in retaliation for claims that Pangea presented to the contracting officer (*see* amend. comp. ¶ 18). The government moves for summary judgment because, it says, "there is no evidence to suggest that the Corps Assessing Official acted in an arbitrary or capricious manner or abused their discretion" (gov't mot. at 38-39).

### STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following, taken from the government's recitation (gov't mot. at ¶¶ 91-101), is not in genuine dispute. There is no genuine dispute because Pangea says only this in response to the government's recitation:

> These paragraphs [gov't mot. ¶¶ 91-101] do not contain statements of undisputed material facts on the allegations made by Pangea, but simply a recitation of the contentions made by Pangea and the opinions of Respondent in response to this claim.

(App. resp. at 11) Fed. R. Civ. P. 56(e)(2).

11

FAR 42.1503 includes Table 42-1—Evaluation Ratings Definitions, which defines the different ratings that can be entered for performance evaluations including but not limited to the following:

(e) Unsatisfactory: Performance does not meet most contractual requirements and recovery is not likely in a timely manner. The contractual performance of an element or sub-element contains a serious problem(s) for which the contractor's corrective actions appear or were ineffective.

On April 24, 2019, the Corps sent its Final Contractor Performance Assessment Reporting System (CPARS) Evaluation to Pangea. The Corps provided the following ratings to Pangea:

Quality: Unsatisfactory
Schedule: Unsatisfactory
Cost Control: N/A
Management: Unsatisfactory
Small Business Contracting: N/A
Regulatory Compliance: Satisfactory

Under Quality, the Assessing Official included comments regarding serious issues with several aspects of Pangea's quality control process, preparatory meetings, submission of daily reports, submittal approvals, key safety personnel, and attendance at other required meetings. For example, at project completion, Pangea had failed to submit more than 160 required submittals and the Final Evaluation references 13 separate Specifications sections Pangea failed to comply with during contract performance. Under Schedule, the Assessing Official included comments regarding concerns with Pangea's failure to get input from subcontractors and suppliers in development of its original schedule, failure to review bar charts produced at weekly progress meetings, and delays in providing all required submittals, all of which contributed to Pangea's significant delay in contract completion. Under Management, the Assessing Official included comments regarding concerns with the high level of active engagement from Corps personnel, including senior leadership and Pangea's corporate office, which was required to ensure Pangea was able to complete the project, albeit over 100 days behind schedule.

Pangea first viewed the Final Evaluation on May 1, 2019. Between May 2, 2019 and June 17, 2019, twelve emails were sent by CPARS to mzambrana@pangea-group.com. No action was taken by Pangea during this period.

Pangea did not enter a non-concurrence or comments in response to the Final Evaluation, and on June 23, 2019, the 60-day window for doing so expired. On June 25, 2019, the Corps' Assessing Official acknowledged his review and approval of the

12

comments and the Final Evaluation was closed.  On August 26, 2019, Pangea appealed its Final Evaluation to the District's Senior Reviewing Official, wherein Pangea requested that its rating be revised to reflect circumstances identified by Pangea.  In its October 17, 2019 Request for a Contracting Officer's Final Decision, Pangea again requested reconsideration of its Final Evaluation, incorporating by reference the same appeal considered by the Senior Reviewing Official (R4, tab 78 1369).  On February 24, 2020, the Senior Reviewing Official responded to Pangea's initial request for reconsideration of its appeal, upholding the Unsatisfactory ratings assigned to Pangea for the "Quality," "Schedule," and "Management" evaluation factors.

## *DECISION*

Government officials are presumed to have acted in good faith; to prove bad faith (here, retaliation; *see Genome-Commc'ns*, ASBCA Nos. 57267, 57285, 11-1 BCA ¶ 34,699 at 170,889 (allegedly bad faith, retaliatory contract termination); *Defense Systems Co.*, ASBCA No. 50918, 00-2 BCA ¶ 30,991 at 153,005 (allegedly bad faith, retaliatory cure notice)) Pangea would have to show with convincing clarity a high probability that the government officials responsible for the CPARS acted from personal animus with specific intent to injure it.  *See Watts*, 19-1 BCA ¶ 37,382 at 181,728.  Pangea's entire response to the government's argument consists of the following:

> Pangea understands that it must meet its burden of establishing that the evaluation of Respondent is unjustified as alleged in this claim and intends to do that in the hearings on this Claim as well as Claims 1, 2, 3, 4 and 6 which will establish a pattern of conduct by Respondent that renders this evaluation unjustified.  These issues are heavily fact dependent, and until there is a full hearing on all of these claims, such a determination cannot be rendered.

(App. resp. at 11)  Such mere denials and conclusory statements are not sufficient.  *See McDonnell Douglas*, 95-1 BCA ¶ 27,333 at 136,229.  Pangea has failed to make a showing sufficient to establish the existence of a high probability that the government officials responsible for the CPARS acted from personal animus with specific intent to injure Pangea, an element essential to Pangea's case, and on which Pangea would bear the burden of proof at trial.  *See Watts*, 19-1 BCA ¶ 37,382 at 181,728.  The government is entitled to summary judgment upon Claim 7, and its motion for summary judgment upon that claim is granted.

*Claim 8:  Payment Withholding*

13

On this claim both parties move for summary judgment in their favor (gov't mot. at 39-41; app. resp. at 13-15). Pangea alleges that the government has violated the Prompt Payment Act, 31 U.S.C. §§ 3901-3905, because the government has not yet paid what Pangea says is "the undisputed balance due" under the contract" (amend. compl. ¶ 19). The government says that "Pangea has not paid at least some of its subcontractors," and that the government is justified in refusing payment of Pangea's final invoice (Invoice No. 18) "so long as Pangea continues to request payment of amounts it has retained from its subcontractors" (gov't mot. at 41). The government also cites a March 1, 2021 letter from an attorney ostensibly writing on behalf of Pangea's surety, North American Specialty Insurance Company, notifying the contracting officer in writing that, with respect to the contract at issue:

> It has come to my attention that the United States Army Corps of Engineers ("USACE") intends to issue payment of contract funds directly to Pangea, Inc., in connection with the above referenced Project. *It is also my understanding that there are outstanding amounts owed to subcontractors and suppliers on this Project*, which North American Specialty Insurance Company ("NAS") bonded pursuant to the Miller Act. The Miller Act Bond number is 2258142. Dave Mathews of NAS has spoken with Michael Zambrana of Pangea, Inc. about this matter, and *it is my understanding that Mr. Zambrana has agreed the funds to be distributed by the USACE will either be issued jointly to Pangea, Inc. and the subcontractors and suppliers that are owed payment of these funds or directly to the Surety* to cover its losses under this and the other payment and performance bonds that NAS issued for Pangea, Inc. The Surety will be involved in how the funds are distributed, once the USACE is ready to make the distribution.

> Please accept this as written instructions to yourself as the Contracting Officer. Please provide me with verification that you have received this correspondence and will proceed as instructed.

(R4, tab 103 at 2652-53 (emphasis added)) And as the government also points out but Pangea ignores (gov't mot. at 40; app. resp. at 13-14), FAR 28.106-7(b) provides:

> If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors

14

or suppliers, the contracting officer shall withhold final payment . . . . The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties.

At this stage, the Board is not persuaded that either party has met its burden of proving that it is entitled to summary judgment on this issue, for at least one reason: whether, within the meaning of FAR 28.106-7(b), there is an "agreement between the contractor and surety" requiring the contracting officer to "authorize final payment" is a question that will require further development of the record, presumably during a hearing on the merits. The parties' cross-motions for summary judgment upon Claim 8 are, therefore, denied.

## CONCLUSION

The government's motion for summary judgment upon Claims 3, 4, 5, 6, and 7 is granted. The government's motion for summary judgment upon Claims 1, 2, and 8 is denied. Pangea's motion for summary judgment upon Claims 5 and 8 is denied.

Dated: January 4, 2022

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

15

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62561, 62640, Appeals of Pangea, Inc., rendered in conformance with the Board's Charter.

Dated:  January 5, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals